ALEXANDER A. LA LONDE, APPELLEE, v. PETER SODERBERG, APPELLANT.

FILED MAY 4, 1914. No. 17,766.

1. **Master and Servant: DUTY OF MASTER.** A master is not an insurer of the safety of his servant, but is only required to use ordinary care in furnishing the servant with reasonably safe, suitable tools and implements, and a reasonably safe place in which to perform his work.

2. ———: **ASSUMPTION OF RISKS.** An experienced carpenter engaged in the work of erecting a one-story building assumes the ordinary risks of his employment, and is required to use such means in climbing upon and descending from such building as his own judgment and convenience may suggest.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Reversed and dismissed.*

*Edgar M. Morsman, Jr.,* for appellant.

*W. W. Slabaugh* and *John W. Battin, contra.*

BARNES, J.

Alexander La Londe was injured while in the employ of Peter Soderberg, a contractor and builder, and commenced this action in the district court for Douglas county to recover his damages therefor. From a judgment in plaintiff's favor the defendant has appealed.

It appears that Soderberg had a contract for the erection of certain government buildings located at Fort Omaha. One of the buildings was known as an oil house.

That building was one-story in height, and consisted of a wooden frame of 2x4's, covered with corrugated iron. It was 14 feet wide and 40 feet long. The inside of the building was open, with no ceiling or attic. At no time were more than three workmen employed in the construction of the building, and up to the time when the accident occurred all of the work had been performed thereon by the plaintiff, a fellow servant named Johnson, and Anderson, who was Soderberg's foreman. The plaintiff was an experienced carpenter, and had worked for Soderberg upon the job in question for several days prior to the accident. He had worked four full days upon the oil building itself, and the work had progressed so far that the studding was up and the tie joists fastened. The plaintiff then went to work upon what is called the feed building, and, while working on that building, Johnson and Anderson continued to work on the oil building. After working on the feed building for two or three days the plaintiff returned to work on the oil building, and was told to put in place the short gable studding. To perform that work it was necessary for him to climb up onto the tie joists. This the plaintiff did, and, just prior to finishing the work of putting in the gable studding, Anderson told the plaintiff that when he had finished he should come down and put in the doubles on the doors. No ladders were furnished for the use of the men in the performance of the work upon any of the buildings. The men themselves made their ladders as they needed them. There was no ladder used at the oil building, but there was one at the feed building which La Londe and another workman had constructed out of 2x4's. The oil building was so small that no ladders were needed. The plaintiff in putting in the short gable studding at the north end of the building climbed up to the plate by means of the header of a window frame. No particular method of climbing up or down was prescribed by any one, nor did Soderberg attempt to furnish any means whereby the men could ascend or descend from the tie joists. When the plaintiff had finished the task of putting in the gable studding, he started to climb down to

work on the doors. It appears that a loose 2x4 lay directly beside a tie joist. In descending the plaintiff took hold of this loose 2x4, which turned over, and caused him to lose his hold and fall. It is his contention that this loose 2x4 had been placed beside the tie joist during the time he was working on the feed building, and when he climbed up on the morning of the accident to put in the short gable studding he did not notice or look at the 2x4 because, as he testified, he "was not paid for looking, but was paid for working." Plaintiff fell the distance of 8 or 9 feet, and struck on the floor joist of the building. That he was injured, to some extent, there is no dispute.

The petition contains many averments of negligence, but all of those averments were eliminated by the instructions of the court except one, and by instructions 4 and 7 the court submitted to the jury the question as to whether or not the defendant was guilty of negligence in failing to provide a safe place for the plaintiff to work. The jury returned a verdict in plaintiff's favor, and the issue raised by this appeal is whether or not there was sufficient evidence to justify the jury in finding the defendant negligent by reason of the fact that he failed to prevent some employee from leaving a loose 2x4 lying beside the tie joist. It is not contended that the defendant had any personal knowledge of that condition. It was the contention of the defendant that in the construction of this one-story oil building he furnished sufficient material for all purposes, and made no attempt to prescribe the manner or furnish the means by which the men should ascend or descend to or from the attic of the building. He had left it with the plaintiff himself to determine how he should climb up and down. There is thus presented the simple question as to whether or not a master is liable to his servant who is injured in descending from the tie joist of a one-story building, which is in course of construction, by taking hold of a loose 2x4 which turns over under his weight. It is the contention of the appellant that the master is not an insurer of the safety of his servant, but is liable only for negligence.

La Londe v. Soderberg.

In 26 Cyc., p. 1077, it is said: "The master is not, however, liable as an insurer, and is only required to exercise such ordinary and reasonable care and precaution for the safety of his servants as the nature and dangers of the business admit of and demand. As between master and servant negligence should be measured by the character and risk of the business engaged in, and the degree of care of all parties is higher when the lives and limbs of themselves and others are endangered than in ordinary cases." On page 1113 of the same work it is said: "A master owes it to his servant to furnish him with a reasonably safe building or other place in which to do his work, and is liable for injuries occasioned by his negligence in this regard. This rule does not apply to a case where servants are creating a place of work, when it is constantly changing in character by their labor, when it only becomes dangerous by the carelessness or negligence of the workmen, when the dangers which arise are very short-lived, or when, by the negligence of the workmen, the place is rendered unsafe without the master's fault or knowledge." On page 1115 it is further said: "Where a master furnishes, or causes to be built under his direction and control, a platform, scaffold, staging, or like structure for the use of his servants in the prosecution of their work, it is his duty to exercise ordinary care to see that it is reasonably safe for the purpose contemplated. But where the structure is erected by the workmen from material furnished by the master, and the master has no direction or control of the construction, he is not liable for injuries sustained by one of the workmen by reason of defects in the structure, provided he has used reasonable care in the selection of proper and suitable material. This is the only duty which the law imposes upon him."

The rule thus announced was followed in *Lincoln Street R. Co. v. Cox*, 48 Neb. 807, where it is said: "A master does not insure his servants against defective appliances. The rule is that he is bound to use such care as the circumstances reasonably demand to see that the appliances furnished are reasonably safe for use, and that they are after-

wards maintained in such reasonably safe condition. He is not liable for defects of which he has no notice, unless the exercise of ordinary care under all the circumstances would have resulted in notice. In an action by a servant against his master for personal injuries the jury cannot be permitted to infer negligence from the mere fact that an accident happened. A want of ordinary care must be pleaded and proved."

In *Swift & Co. v. Holoubek*, 55 Neb. 228, it was held that the "master does not insure his servant, although the latter be of immature years, from injury by machinery in its nature dangerous, and an instruction which permits the jury to find for the plaintiff if the machinery was dangerous, and the plaintiff was not guilty of contributory negligence, is erroneous."

A servant by his contract of employment assumes all risks and dangers incident thereto. *Missouri P. R. Co. v. Baxter*, 42 Neb. 793.

In the case at bar the plaintiff was an experienced carpenter. He knew the dangers incident to the work of constructing an ordinary building, such as the one on which he was employed. He and his fellow servants were constantly changing the situation in relation to the building in question, and there was no evidence that the defendant had knowledge that the 2x4 had been left at the place where the plaintiff took hold of it in attempting to climb down from the plate where he had been working; and, as we view the case, the defendant was not liable for the plaintiff's injuries. At the close of the testimony counsel for the defendant requested the jury to return a verdict in his favor. This request should have been granted.

The judgment of the district court is therefore reversed and the cause is dismissed.

REVERSED AND DISMISSED.

ROSE, SEDGWICK and HAMER, JJ., not sitting.